Bockes, J.
This action was brought -by the plaintiff, as administratrix, under the act of 1847, and its amendments, which give compensation in case of the death of a person occasioned “ by wrongful act, neglect or default.”
The defendants, a manufacturing company, were engaged in the distillation of coal-tar, and in the manufacture of oils, as benzole, benzine and naphtha.
The deceased, a son of the plaintiff, was a boiler-maker in the employ of a firm engaged in the construction and- 'reparation of boilers, and was sent by his employers to the defendants’ manufactory to repair their boiler. To prosecute the work, it was necessary to labor on the inner surface,by the light of lamps, entering through an orifice opened for the purpose.
On the day of the disaster, the deceased labored as he had done for several previous days, until twelve o’clock, then went *241 to his dinner, from which he returned in about a half hour, entered the boiler, and fell dead almost instantly, in consequence of inhaling foul and poisonous gas, which had accumulated during his absence. It does not distinctly appear where and how the foul gas had its origin. On this point, the parties supported different theories from the evidence. On. the part of the plaintiff, it was insisted that it was generated In the adjoining- still—the entire works comprising six—and escaped into the boiler where the deceased labored, through some imperfection in the works, or by reason of inattention and want of care in the defendants’ agents and servants in permitting this result.
On the part of the defendants, it was maintained that the gas was generated in the boiler itself, by reason of the combustion of the lamp, and the respiration of the laborers therein ; and further, that, wherever it had its origin, the deceased himself contributed to the danger, and actually caused the catastrophe, by closing or directing the closing of the ventilator attached to the boiler, and which operated as a safety-valve for the escape of noxious gases.
There was no dispute but that there was such ventilator, and that safety to the laborers within the boiler required it to be generally, if not at all times, open while the work was progressing; nor is there any dispute but that the deceased, in the forenoon of the day of the disaster, directed and caused it to be closed.
In this view of the case, and, in my judgment, none other can fairly be taken, the learned judge should have nonsuited the plaintiff at the close of the evidence, as he was requested to do; for, on the conceded or undisputed facts, it stood established, that the deceased, by bis own careless, negligent and wrongful act, contributed to the cause which produced his death. It seems plain, beyond peradventure, that the closing of the ventilator prevented, in a very great degree, the escape and diffusion of the noxious vapor, and caused it to accumulate ; and its unusual collection and concentration, thus produced, was the immediate cause of the injury complained of.
But if it be admitted ■ that a case was made for the eon *242 sideration of the jury, then it was submitted to them, in one respect, upon a wrong theory. The general tone of the charge was undoubtedly correct. The jury were instructed that they were to consider the ordinary hazards and risks of the employment, whatever they were, as having been voluntarily assumed by the deceased; that when a man engages in a dangerous enterprise, he accepts its ordinary risks, and is bound to foresee and submit to the consequences which usually attend it. They were also correctly instructed, that, in order to recover, the plaintiff was bound to show that the . deceased came to his death without fault on his part, and through the negligence, carelessness or wrongful act of the defendants, them agents or servants. But they were also told that, under the facts proved in this case, the defendants must explain how this man came to his death; that, since the plaintiff had shown that the deceased was killed on the defendants’ premises, in their factory, under their exclusive control, that the burden of proof was cast upon the defendants to explain how that death came, and that they must satisfy them (the jury) that it was caused without any fault on their part, or be responsible in damages. It was also charged, that, inasmuch as the death occurred on the defendants’ place, where they were in the exclusive occupation and control of it,, as matter of law the defendants were liable, unless they could explain the cause; that, when a man has been killed or has died on the premises of a party charged with a wrong in that regard, without assignable reason for it that can be seen, such person is bound, in order to discharge himself from liability, to show that he is not to blame for such death. And, again, the judge remarked: “How, upon that question” (the question how deceased came to his death), “the burden of proof, as I have told you, is with the defendants, to show how this man .same to his death, because it toóle place on their premises / ” .and it is added, “ it is not necessary, as I can see, for the plaintiff to show you the precise manner or theory of his death.” There are other paragraphs in the charge of .similar import.
These instructions were obviously erroneous. The mere» feet of an injury or death on the' premises of a party, in his *243 possession and under his control, raises no presumption of wrong against such party. The circumstances under which the injury occurred must still be proved, showing a wrongful act or omission of some duty on the part of the person sought to be charged, in order to establish a liability. The simple happening of an injury on one’s premises, raises no presumption of wrong on his part, any more than would the happening of an injury in his presence or under his observation. The burden of proof, in all cases of negligence, is on the plaintiff.
It was held in Holbrook v. Utica & Schenectady R. R. Co. (12 N. Y., 236), that when a passenger on a railroad is injured, the burden of proving that the injury was caused by the negligence of the company, or its servants, rests upon the party seeking to recover damages "therefor; and that the mere fact that a person is injured while riding in a railroad-car, does not impose upon the company the burden of disproving negligence. Judge Euggles properly remarks, the presumption arises from the cause of the injury, or from other circumstances attending it, and not from the injury itself. So, in the case under examination, if indeed it was a proper one for them, the jury should have been directed to examine into the cause of the death, with a view of determining the defendants’ liability, instead of starting with a presumption of wrong, from the fact that the deceased died, on the defendants’ premises. The charge of the judge was manifestly wrong in a very essential particular. It cast the burden of proof where it did not belong, and permitted the jury to hold the defendants to a liability not warranted by the facts on which it was supposed to rest.
■ The order of the general term, reversing the judgment and granting a new trial, was clearly right, and should be affirmed. The defendants are also entitled to judgment absolute in their favor, according to the stipulation.
Davies, Hunt, Scrugham, Parker and Grover concurred in the conclusion arrived at, on the last point discussed in the opinion.
Porter, J., was for reversal.
Wright, J., expressed no opinion.